FILED
United States Court of Appeals
Tenth Circuit

April 25, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

WYTHE S. CROWE,

     Plaintiff - Appellant,

v.

ADT SECURITY SERVICES, INC.,

     Defendant - Appellee.

No. 10-1298

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:09-CV-00016-PAB-CBS)**

Mark Berumen and Gregory Clifton of Berumen Law Firm, P.C., Aurora, Colorado, for Plaintiff - Appellant.

Michael Matula (and Nicholas J. Walker of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., on the brief), Kansas City, Missouri, for Defendant - Appellee.

Before **KELLY**, **SEYMOUR**, and **HOLMES**, Circuit Judges.

**KELLY**, Circuit Judge.

     Plaintiff-Appellant Wythe Crowe appeals the district court's grant of summary judgment in favor of Defendant-Appellee ADT Security Services, Inc. ("ADT") on his claims for discrimination and retaliation in violation of Title VII

and 42 U.S.C. § 1981.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

Because this matter was resolved on summary judgment, we view the facts and inferences in favor of the nonmoving party.  Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1184 (10th Cir. 2010) (citation omitted).  In this case, the undisputed facts are as follows.[1]

Mr. Crowe, who is African-American, worked for ADT as a technician providing telephone support to customers and dealers from July 1997 to July 27, 2007.  Aplee. Supp. App. ("ASA") 39, 51, 149.  On December 1, 2006, an ADT employee, Olivia Nguyen, complained to her manager that Mr. Crowe made her feel uncomfortable "because everytime I walk by he stares at me inappropriately . . . at my bottom & makes it really obvious."  Id. at 39, 69.  The employee wrote a statement to that effect, and a manager, Mr. Hollowell, corroborated her statement

---

[1]  Though Mr. Crowe's under-inclusive appendix is non-compliant with Federal Rule of Appellate Procedure 30 and 10th Circuit Rule 30.1(A), the necessary materials are included in ADT's supplemental appendix.

In his response to ADT's motion for summary judgment, Mr. Crowe labeled several facts as "disputed."  However, he disputes only the conduct  underlying the complaints received by ADT, not that complaints were made or that ADT believed them to be true.  See, e.g., Aplee. Supp. App. 243.  Because only the employer's bona fide belief that the behavior occurred is relevant to our analysis, see, e.g., Sorbo v. United Parcel Serv., 432 F.3d 1169, 1178 (10th Cir. 2005) (citations omitted), these facts are undisputed for our analysis.  We do note that ADT has not proven the underlying occurrences and that they remain disputed.

with his own.  Id. at 39-40.  Mr. Hollowell provided both statements to his supervisor, Heather England.  Id. at 40.  Ms. England, in turn, reported the complaint to a human resources agent, Mr. Easterling, who spoke to the complainant and two witnesses.  Id.  He concluded that the complaint was well-founded.  Id.  Mr. Crowe does not dispute that Ms. Nguyen told her manager that Mr. Crowe was sexually harassing her, but disputes the underlying conduct.  Id. at 243-46.

Some time in early December—the exact date is disputed, see id. at 254—Mr. Crowe and three other employees met with a manager, Mike Hanley, to discuss concerns about the lack of African-Americans in management and the perception that African-Americans had been passed over for promotions.  Id. at 52.  ADT investigated the complaints and found that (1) none of the African-American employees ranked as high as those eventually selected for the promotions, and (2) race was not a factor in the promotions.  Id.

On January 3, 2007, Mr. Easterling received a complaint from one of Mr. Crowe's supervisors that Mr. Crowe had not responded promptly and professionally to her request that he remove his hat to comply with ADT's dress code.  Id. at 41.  Again, Mr. Crowe disputes the occurrence, but does not dispute that ADT received a complaint.  Id. at 246-47.

On January 5, 2007, Mr. Easterling drafted a final written warning predicated on the complaints of sexual harassment and unprofessional behavior.

- 3 -

Id. at 41, 79-81. The final written warning provided that Mr. Crowe would be terminated upon the occurrence of other instances of harassment, unprofessional behavior, or insubordination. Id. at 79-80. Mr. Easterling and Jim Mooney, the supervisor of the facility, presented the final written warning to Mr. Crowe on January 30, 2007. Id. at 41-42. Mr. Crowe refused to sign the warning, and the next day he presented Mr. Easterling with a written response in which he denied the allegations. Id. at 43. In his response, Mr. Crowe acknowledged that he had previously been accused of harassment and insubordination, but that the accusations were made by "scandalous and treacherous women accusing [male employees of ADT] of sexual harassment" and thus should not be believed. Id. at 83 (emphasis in original).

In May 2007, more complaints about Mr. Crowe's behavior surfaced. One of Mr. Crowe's supervisors, Elaine Trujillo, briefly interrupted Mr. Crowe while he was on the phone with a technician. Id. at 44. Mr. Crowe became upset. Some time later, Ms. Trujillo approached Mr. Crowe to offer assistance with a call, but Mr. Crowe waved her off, indicating that he wanted to deal with another supervisor, Mr. Greer. Id. at 44, 248. Ms. Trujillo described these encounters in a letter written to Mr. Crowe's team manager. Id. at 44. Finally, in mid-May, an ADT employee who sat next to Mr. Crowe requested to be relocated because Mr. Crowe created a negative work environment by repeatedly criticizing his female supervisors and calling a particular supervisor, Ms. England, a racist. Id. at 45.

Mr. Crowe disputes these occurrences, but does not dispute that complaints were filed. Id. at 248.

After these incidents, Mr. Mooney tasked a human resources representative, Ms. Laurila, with resolving the situation as he was tired of Mr. Crowe's conduct. Id. at 46. At that time, Ms. Laurila was unaware of Mr. Crowe's personnel history. Id. Her investigation revealed numerous complaints of inappropriate behavior, most notably sexual harassment and insubordination, as well as multiple final written warnings. Id. at 46-47. Despite the number of incidents, Ms. Laurila thought that there was insufficient documentation to immediately terminate Mr. Crowe. Id. at 49. Ms. Laurila conducted several interviews with managers about the incidents, and afterwards determined that Mr. Crowe should be terminated. Id. Again, Mr. Crowe does not dispute the contents of his personnel file, but disputes that the incidents occurred as documented. Id. at 250.

On July 25, 2007, Ms. Laurila provided to Ms. Stanfield, the director of human resources, a written report summarizing the results of her investigation and recommending that Mr. Crowe be terminated. Id. at 50-51. In the report, Ms. Laurila contended that ADT had "truly exhausted all efforts to maintain his employ." Id. at 219. She also expressed concern that, should Mr. Crowe not be terminated, ADT could be subject to lawsuits:

> [W]hy have we allowed Wythe to treat management and specifically, women in positions of power, with such disrespect? Why did ADT continue to try to appease this person and not support or protect our

management team from this type of harassing and disrespectful abuse? This behavior is against the law at any company in this country. Why do we allow it here at ADT? If Heather England took this case to the EEOC or to court, ADT could lose because we were not there to protect *all* employees from a hostile work environment that is free from harassment.

. . . .

The ramifications of not terminating Wythe Crowe could be huge! Think about this: What if a white male exhibits the same harassing, insubordinate, discriminatory, and disrespectful behavior as Wythe has done over the years. If we decide to fire this person, we have now set ourselves up for a reverse discrimination lawsuit. For that matter, since we have allowed Wythe to exhibit this type of behavior for many years, it does not matter whether the next person is white, yellow, or pink, we are setting ourselves up for a potential lawsuit due to the precedent we have set by allowing Wythe Crowe to continue his employment at ADT.

Id.

Ms. Laurila's report and recommendation listed twenty-three disciplinary incidents dating back to 1999 and described in detail nine of the incidents, including five separate complaints of sexual harassment. See id. at 217. After receiving the report and recommendation, Ms. Stanfield and Mr. Easterling received approval to terminate Mr. Crowe. Id. at 51. They did so on July 27, 2007. Id. at 51, 149.

Following these events, Mr. Crowe filed suit, alleging that he was terminated on the basis of his race or in retaliation for complaining about the lack of African-Americans in management, all in violation of Title VII and 42 U.S.C. § 1981. See Doc. 1. ADT moved for summary judgment. See ASA 38. Mr. Crowe filed a motion in opposition, which disputed ADT's listed facts to the

extent noted above.  See id. at 242.  The district court granted summary judgment to ADT on the ground that Mr. Crowe failed to make a prima facie case of both discrimination and retaliation, and that he failed to raise a genuine dispute of material fact as to whether ADT's proffered non-discriminatory and non-retaliatory rationales for terminating Mr. Crowe were pretextual.  See Crowe v. ADT Sec. Servs., Inc., No. 09-cv-00016-PAB-CBS, 2010 WL 2650451 (D. Colo. June 30, 2010).  Mr. Crowe timely appealed.  See Doc. 67.

On appeal, Mr. Crowe argues that he established a prima facie case on both his discrimination and retaliation claims, and that there exist genuine disputes of material fact that ADT's proffered reason for his termination were pretextual. Aplt. Br. 10.

## Discussion

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine "if there is sufficient evidence so that a rational trier of fact could resolve the issue either way."  Adler, 144 F.3d at 670 (citation omitted).  A fact is material "if under the substantive law it is essential to the proper disposition of the claim."

Id. (citation omitted).

A plaintiff may prove violation of Title VII or 42 U.S.C. § 1981—the standards are the same, see Aramburu v. Boeing Co., 112 F.3d 1398, 1403 n.3 (10th Cir. 1997) (citations omitted)—either by direct evidence of discrimination, cf. Fischer v. Forestwood Co., 525 F.3d 972, 983 (10th Cir. 2008), or by adhering to the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Although Mr. Crowe argued to the district court that he produced direct evidence of discrimination, he did not do so in his opening brief. In any event, we agree with the district court that Ms. Laurila's statements do not constitute direct evidence that he was terminated because of his race—her report and recommendation does not express racial animus or bias concerning the decision at hand. See Jones v. Robinson Prop. Group, LP, 427 F.3d 987, 993 (5th Cir. 2005). Instead, Ms. Laurila's report urges that ADT should enforce its workplace policies—particularly its policies against harassment in the workplace and against disparate discipline—consistently, regardless of the offender's race. See ASA 219.

For this reason, we do not find the supplemental authority urged by Mr. Crowe particularly helpful. In Staub v. Proctor Hosp., — U.S. —, 131 S. Ct. 1186 (2011), the Supreme Court considered the circumstances under which an employer may be held liable for the discriminatory animus of an employee who influenced,

but did not make, the ultimate adverse employment decision. This is sometimes referred to as "cat's paw" liability. See EEOC v. BCI Coca-Cola Bottling Co., 450 F.3d 476, 484 (10th Cir. 2006). The Court held that where an employee performs an act motivated by discriminatory animus intending to cause an adverse employment decision, the employer will be liable if that act is a proximate cause of the eventual adverse employment decision. Staub, 131 S. Ct. at 1194. Applied to this case, Mr. Crowe argues that "Ms. Laurila influenced the ultimate decision to terminate Mr. Crowe and in the process exhibited a discriminatory animus in her memorandum recommending termination. This memorandum was relied upon in the [employer's] decision to terminate Mr. Crowe." Fed. R. App. P. 26(j) Ltr. dated Mar. 9, 2011.

Without question, Ms. Laurila intended her report to result in an adverse employment action, and there is a triable issue on whether it was the proximate cause of Mr. Crowe's termination. However, the report, even when viewed in the light most favorable to Mr. Crowe, simply does not exhibit hostility to Mr. Crowe based upon his race. See Staub, 131 S. Ct. at 1194 (noting evidence that the subordinates' actions were motivated by hostility to the employee's military service obligations); see also Cafasso, United States ex. rel. v. Gen. Dynamics C4 Sys., NVW, Inc., — F.3d —, 2011 WL 1053366, at *9 n.14 (9th Cir. 2011) (discussing elements in Staub). The report merely discusses ADT's potential exposure to lawsuits based upon a failure to enforce its policies on a consistent

basis, without regard to race. We need not expound on how the requisite discriminatory animus may be shown, but the report here is insufficient.

Accordingly, our review is guided by the familiar burden-shifting framework of McDonnell-Douglas. Under that rubric, the plaintiff must first establish a prima facie case of discrimination or retaliation. Then, the defendant may come forward with a legitimate, non-discriminatory or non-retaliatory rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual. Young v. Dillon Cos., 468 F.3d 1243, 1249 (10th Cir. 2006). This framework applies to both discrimination and retaliation claims. See id. (racial discrimination); Mathews v. Denver Newspaper Agency, LLP, — F.3d —, 2011 WL 892752, at *10-11 (10th Cir. 2011) (retaliation).

Although the district court held that Mr. Crowe failed to establish a prima facie case of either discrimination or retaliation, we assume, without deciding, that he did so. The parties do not dispute that ADT proffered a legitimate, non-discriminatory and non-retaliatory reason for terminating Mr. Crowe. Thus, we must determine whether there is evidence from which a reasonable trier of fact could determine that ADT's justification for Mr. Crowe's termination was pretextual. We hold that there is not.

A.    Evidence of Pretext—Discrimination.

On appeal, Mr. Crowe argues that he produced evidence from which a

reasonable trier of fact could conclude that ADT's reason for terminating him was pretextual. Aplt. Br. 14. Specifically, he argues that, given our precedent in Garrett v. Hewlett-Packard Co., 305 F.3d 1210 (10th Cir. 2002), Mr. Crowe's extensive background of alleged harassment and insubordination does not preclude him from establishing pretext. Id. at 15. Indeed, according to Mr. Crowe, the history of complaints against him actually undercuts ADT's proffered rationale—since ADT tolerated his behavior from 1999 to 2007, something other than his inappropriate behavior must have motivated his termination. Id. Mr. Crowe also notes that here, like in Garrett, ADT offered no objective criteria in support of its decision and that ADT had no objective standards to determine when inappropriate behavior would lead to termination, as opposed to just another unenforced final written warning. Id.

Mr. Crowe's reliance on Garrett is misplaced. Garrett presented strikingly different facts: there, an employee had received largely positive evaluations for seventeen years, but began receiving poor evaluations after starting a pro-diversity group. Garrett, 305 F.3d at 1213-14. The prior positive evaluations contained the relatively minor critique that he often over-thought problems. Id. at 1213. The employer latched onto these minor critiques in the prior, largely positive reviews and, along with the recent negative reviews, used them as justification for an adverse employment action. Id. at 1215, 1218.

We reversed the district court's grant of summary judgment in favor of the

employer.  In relevant part, we noted that the employee evaluations were apparently completely subjective.  Id. at 1218.  Given the subjective method of evaluating employees, the unexplained shift from largely positive to entirely negative reviews, and the minor nature of the prior critiques—to which the employer suddenly attached great weight—we held that "[a] jury could reasonably infer that [the employee's] supervisors discriminated against him by inflating and exaggerating long-standing critiques of his performance as a means of exercising racist and ageist animus towards him." Id. at 1218-19.  Further, the plaintiff presented substantial evidence in support of his pretext argument: evidence of inconsistencies and contradictions between the positive and negative evaluations, evidence that similarly-situated employees had been treated differently, and evidence that significant procedural irregularities had surrounded his recent, negative reviews.  Id. at 1219-20.

Contrast Garrett with this case.  Between 1999 and 2007, ADT received at least twenty-three complaints about Mr. Crowe's behavior.  See ASA 217 (listing incidents).  The complaints against Mr. Crowe were not ADT's evaluations of Mr. Crowe's work performance, but rather complaints of inappropriate behavior from his co-workers and managers.  Id.  The complaints were not trivial, and included five alleged incidents of sexual harassment.  Id. at 219.  There is no evidence that ADT attempted to exaggerate or manipulate those complaints in order to justify termination—Ms. Laurila apparently described the incidents as they were

documented in Mr. Crowe's personnel file, and she merely noted the possible negative consequences of continuing Mr. Crowe's employment despite the long history of complaints. Id. at 217-19. Finally, ADT's rationale for terminating Mr. Crowe has been entirely consistent, is coherent, and there is no evidence of similarly-situated employees who were treated differently. These facts easily distinguish Garrett from the instant case.

Because the result in Garrett does not govern, we proceed with the McDonnell Douglas framework. In this case, the parties do not dispute that ADT came forward with a legitimate reason for terminating Mr. Crowe: his extensive history of alleged sexual harassment and insubordination. ASA 219, Aplee. Br. 21-22. Therefore, absent evidence from which a reasonable fact-finder could conclude that ADT's rationale was pretextual, summary judgment for ADT was appropriate. See Young, 468 F.3d at 1249-50. The record in this case reveals no evidence of pretext.

A plaintiff may show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007) (internal quotation marks and citation omitted). Pretext may also be shown by providing direct

evidence that the proffered rationale is false, or that the plaintiff was treated differently from similarly-situated employees.  Id. at 1167-68 (citation omitted).

There is no such evidence in this case.  In support of its motion for summary judgment, ADT provided ample evidence that ADT employees and managers had complained of Mr. Crowe's behavior since 1990.  See ASA 2-5 (listing complaints against Mr. Crowe).  The complaints revealed a pattern of harassing and insubordinate behavior, as well as a series of final written warnings, each of which would have warranted termination.  Id. at 217-19 (listing incidents).  In reply, Mr. Crowe produced no evidence that ADT had shifted rationales, or that ADT's proffered justification was false, incoherent, or contradictory.  Swackhammer, 493 F.3d 1167.  Likewise, Mr. Crowe produced no evidence that similarly-situated employees were treated differently.  Id. at 1168.  In sum, there is simply no evidence to support a reasonable fact-finder's conclusion that ADT's justification was pretextual.

Mr. Crowe argues that he produced sufficient evidence of pretext by showing that ADT's decision to terminate him—as opposed to giving him yet another unenforced final written warning—was governed by subjective criteria.  Aplt. Br. 15.  We fail to see the relevance of Mr. Crowe's assertion to this case.  We typically view with skepticism employee evaluations that are governed by subjective criteria.  See Garrett, 305 F.3d at 1218.  This prevents the employer from conjuring up negative evaluations and subsequently using those negative

- 14 -

evaluations as a rationale for terminating the employee.  See id.

However, unlike in Garrett and similar cases, ADT did not proffer negative employee evaluations as its legitimate rationale for terminating Mr. Crowe. Rather, ADT maintains—and has always maintained—that Mr. Crowe was terminated because of his extensive history of alleged harassment and other disciplinary problems.  See Aplee. Br. 21-22.  Thus, our skepticism of subjective evaluation criteria, when used as the employer's proffered rationale for termination, does not apply here.  Mr. Crowe cites no other cases in support of its subjective-criteria argument.  See Aplt. Br.  14-15.  Thus, we conclude that ADT's prior decisions to be lenient with Mr. Crowe—whether guided by objective criteria or not—do not, in and of themselves, raise a genuine factual dispute that ADT's eventual decision to terminate Mr. Crowe was pretextual.  This is particularly true where, as here, complaints about Mr. Crowe's inappropriate behavior continued unabated, showing the futility of disciplinary actions short of termination.  See ASA 217.

B.    Evidence of Pretext—Retaliation.

Similar to the discrimination claim discussed above, the district court held that Mr. Crowe failed to establish a prima facie case of retaliation and, in any event, Mr. Crowe did not raise a genuine dispute of material fact that ADT's proffered non-retaliatory rationale for terminating Mr. Crowe was pretextual. Crowe, 2010 WL 2650451, at *5.  Again, we assume without deciding that Mr.

Crowe established a prima facie case of retaliation, and our disposition turns on whether Mr. Crowe produced sufficient evidence of pretext.

On appeal, Mr. Crowe advances a single argument with respect to this issue: that ADT had received complaints against Mr. Crowe for nearly seven years, yet ADT fired Mr. Crowe based solely on three complaints that occurred two months after he engaged in protected activity. Aplt. Br. 18. The fact that ADT took action on Mr. Crowe's alleged inappropriate behavior—which had occurred consistently since 1999—only after his complaints to Mr. Hanley about the lack of African-Americans in management, Mr. Crowe argues, creates a genuine dispute of material fact as to whether ADT's explanation was pretextual. Id.

We disagree. First, Mr. Crowe's argument is factually unsupported. Mr. Crowe was not discharged based solely on complaints that occurred after Mr. Crowe's protected behavior. Ms. Laurila's report, which formed the basis for Mr. Crowe's termination, ASA 51,[2] lists and discusses in some detail Mr. Crowe's full personnel history, including numerous allegations of sexual harassment and insubordination. Id. at 217-219. Ms. Laurila's report and recommendation also

_____

[2] In its motion for summary judgment, ADT asserted that Ms. Stanfield, after reviewing Ms. Laurila's report, endorsed the recommendation and approved going forward with the discharge. ASA 51. In his reply, Mr. Crowe labeled that fact as "disputed." Id. at 253. However, Mr. Crowe disputes it only to the extent that he denies any sexual harassment and asserts that Mr. Mooney, not Ms. Stanfield, made the final decision to terminate Mr. Crowe. Id. He does not dispute that Ms. Laurila's report and recommendation formed the basis for his termination.

notes that, given Mr. Crowe's extensive history of alleged troubling behavior, particularly the allegations of sexual harassment, failing to terminate Mr. Crowe would abdicate ADT's responsibility to maintain a harassment-free environment for all employees. Id. Ms. Laurila also expresses confusion as to why Mr. Crowe was not terminated earlier, given his extensive and troublesome employment history. Id.

Thus, while the final written warning that immediately preceded Mr. Crowe's termination was predicated on conduct that might have occurred after Mr. Crowe's protected activity—the precise timing of his protected activity is disputed, see id. at 254—that final written warning was not the sole basis for his termination. Rather, the record reveals that ADT justified its termination of Mr. Crowe based on his entire personnel file, particularly his long history of alleged sexual harassment and insubordination. Id. at 219; Aplee. Br. 21-23.

Accordingly, Mr. Crowe's argument regarding the timing of his termination is not supported by the record, although it may seem persuasive at first blush. ADT did not effectuate an abrupt about-face and determine that Mr. Crowe's post-protected-activity behavior—which was similar to the alleged conduct that had reoccurred since 1999—warranted termination in and of itself. Rather, ADT looked at Mr. Crowe's troubled personnel history, determined that it had "truly exhausted all efforts to maintain his employ," ASA 219, and decided that continuing to employ Mr. Crowe was no longer a viable option.

Second, Mr. Crowe cites no legal authority in support of his argument that ADT's prior leniency raises an inference of pretext, see Aplt. Br. 18, and we see no reason to so hold here. Accepting Mr. Crowe's argument would have the peculiar result of penalizing employers which, like ADT did in this case, attempt to rectify alleged inappropriate behavior instead of immediately terminating an employee upon the first transgression. Indeed, Mr. Crowe's argument effectively inverts an employer's incentives—if two employees engage in the same protected behavior, terminating the employee with a longer, more extensive history of serious complaints would invite litigation, while terminating the employee with a shorter, less extensive history of minor complaints would not entail that risk. In sum, ADT's prior leniency with Mr. Crowe, without more, does not constitute evidence from which a reasonable jury could conclude that firing Mr. Crowe based on his long history of alleged inappropriate behavior was pretextual.

Mr. Crowe makes no other arguments that ADT's proffered, non-retaliatory motivation for terminating him was pretextual, nor does the record reveal any evidence of pretext. ADT's justification remained consistent throughout the case; there is no evidence that it was false, incoherent or contradictory. See Swackhammer, 493 F.3d 1167. Likewise, there is no evidence of similarly-situated employees who were treated differently than Mr. Crowe. Id. Accordingly, there is no evidence from which a reasonable jury could conclude that ADT's proffered, non-retaliatory rationale for terminating Mr. Crowe was

pretextual.

AFFIRMED.