FILED
United States Court of Appeals
Tenth Circuit

September 7, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

BOBBY WILLIAMS,

       Plaintiff-Appellant,

v.

NANCY MCCALLIN, in her
individual and official capacity;
BARBARA MCDONNELL, in her
individual capacity; CINDY HESSE,
in her individual capacity; KRISTIN
CORASH, in her individual capacity,

       Defendants-Appellees.

No. 10-1387
(D.C. No. 1:08-CV-02051-RPM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **EBEL** and **O'BRIEN**, Circuit Judges.

Plaintiff Bobby Williams appeals from the order of the district court that

granted summary judgment in favor defendants, Nancy McCallin, Barbara

McDonnell, Cindy Hesse, and Kristin Corash on his claims for race

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

discrimination under 42 U.S.C. § 1981, and the violation of his First Amendment free speech rights under 42 U.S.C. § 1983. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## Background

The parties are familiar with the facts and procedural history of the case, and we repeat neither in detail. In February 2005, Mr. Williams, an African-American, was hired as Director of Applications Management, an at-will management position, for the Colorado Community College System (System). In December 2006, his employment was terminated because of the "inability to perform [his] duties at the level required of th[e] position." Aplt. App. Vol. 1 at 251.

Mr. Williams was hired by Purdendu Sarkar, who in turn had been hired in January 2005, as the Chief Information Officer in charge of overseeing the implementation of the Enterprise Resource Planning System (ERP), which is an information technology configuration for the thirteen colleges that comprise the System. Mr. Williams' primary responsibility was to ensure that schools' legacy applications functioned during the transition to the new configuration. He supervised four project managers and a group of developers.

From the beginning, there were problems between Mr. Sarkar and the vendor of the software, and his employment was terminated in August 2006.[1] But even before Mr. Sarkar was fired, there were problems with Mr. Williams' performance as well, which included both technical and management deficiencies. In their answer brief, defendants provide a comprehensive list of Mr. Williams' deficiencies, all of which are supported by references to the record. Aplee. Br. at 14-30. Suffice it to say that Mr. Williams' failure to perform his job and lack of professionalism resulted in his termination. He sued the defendants, all of whom are governmental officials at the System.

## Analysis

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court." *Crowe v. ADT Sec. Servs., Inc.*, — F.3d —, 2011 WL 1532536 at *3 (10th Cir. April 25, 2011). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' Fed. R. Civ. P. 56(a)." *Id.* "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way." *Id.* (quotation marks omitted).

---

[1]    In 2007, Mr. Sarkar sued for the alleged violation of his First Amendment rights and national origin discrimination. The district court granted summary judgment to the defendants, and this court affirmed on appeal. *Sarkar v. McCallin*, 636 F.3d 572 (10th Cir. 2011).

A plaintiff may prove a § 1981 case "either by direct evidence of discrimination, or by adhering to the burden-shifting framework of *McDonnell Douglas*." *Id.* at * 3 (citations omitted). Because there is no direct evidence of discrimination, Mr. Williams proceeds under the *McDonnell Douglas* framework, which requires him, in the first instance, to establish a prima facie case of discrimination. The defendants must then come forward with a legitimate, non-discriminatory reason for terminating him. Then, the burden falls to Mr. Williams to show that the defendants' reason for terminating him is pretextual. *Id.* at *4. For purposes of summary judgment, defendants assumed that Mr. Williams set forth a prima facie case. For his part, Mr. Williams appears to concede that defendants proffered a legitimate, non-discriminatory reason for firing him. Thus, the issue is whether Mr. Williams has met his burden of establishing pretext.

"A plaintiff may show pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Id.* at *6 (quotation omitted). Because Mr. Williams "bear[s] the burden of proof at trial [on the issue of pretext], he must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element

essential to his case in order to survive summary judgment." *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007) (quotation omitted).

In his opening brief, Mr. Williams mentions several theories in support of his argument that the decision to terminate his employment was a pretext for discrimination. Some of these theories are recognized as a means to prove pretext. *See Crowe*, 2011 WL 1532536 at *6 (recognizing that one way to prove pretext is by showing "that similarly-situated employees were treated differently"). The problem with this reasoning is that Mr. Williams' opening brief does not contain a single cite to any evidence in the two-volume appendix. In his reply, Mr. Williams says that the lack of record references is of no importance because "[t]he facts set forth in the 'Statement of Facts' and 'Argument' sections are taken from Williams' Complaint filed in the District Court, not spread through a voluminous record." Aplt. Reply Br. at 2. But the unverified complaint is not evidence. *See Cardoso*, 490 F.3d at 1197. Thus, the district court properly granted summary judgment in favor of defendants on Mr. Williams' § 1981 claim.

We turn now to Mr. Williams' claim under § 1983 for the alleged violation of his First Amendment rights. The defendants argue they are entitled to qualified immunity because Mr. Williams cannot point to any constitutional violation, and thus, the law was not clearly established. "The doctrine of qualified immunity protects government officials from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010) (quotation omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id*. (quotation omitted). "[W]e have discretion to decid[e] which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. (quotation omitted).

The theory advanced by Mr. Williams concerning his claim for violation of his constitutional rights is as follows: When the project to implement the new computer system began to experience problems, Mr. Williams sent some emails to Ms. McDonald that "rais[ed] issues that the System did not want to have revealed to the public . . . [particularly in light of] an investigation . . . and several broadcasts [by a local television station] of problems with the computer system." Aplt. Opening Br. at 9. These emails, however, do not form the basis of the claim. "Specifically, Mr. Williams concedes that his speech initially in his emails is speech related to his employment and is not necessarily speech that is protected." *Id*. at 8-9. Instead, his claim rests on the theory that when he made it "clear to all involved that he was blaming the vendor and that he would make truthful statements to the media if he was interviewed," *id*. at 9, he was

-6-

terminated several weeks later.  He describes this claim as "an unusual case of the public entity making the decision to terminate him not for speech he had made in the past but rather for speech it knew he would make in the future." *Id*.

We are unaware of any authority from any court that recognizes such a right.  The lack of any such decision means, perforce, that the law is not clearly established.  As such, the district court properly granted summary judgment in favor of defendants on Mr. Williams' § 1983 claim.

The judgment of the district court is AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Chief Judge