FILED
United States Court of Appeals
Tenth Circuit

November 25, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

CURT C. MELIN,

        Plaintiff - Appellant,

v.

VERIZON BUSINESS, INC.,

        Defendant - Appellee.

No. 14-3071
(D.C. No. 2:12-CV-02426-EFM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.


Curt C. Melin sued his employer, Verizon Business, Inc., for violations of the

Americans with Disabilities Act (ADA) and Title VII.  Mr. Melin alleged that

Verizon discriminated against him based on his disability and retaliated against him

for complaining about the discrimination.  Verizon moved for summary judgment on

Mr. Melin's claims and the district court granted the motion.  Mr. Melin now appeals.

Exercising our jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Mr. Melin has worked for Verizon (or one of its predecessors) since 1992. In 2006, he was diagnosed with ulcerative colitis.[1] During the relevant time period for this lawsuit, he was working as an Account Manager, which required him to sell Verizon services and products to certain assigned clients. He was compensated by both a base salary and commissions.

At some point in 2007, he was assigned to work under Roger Peterson. In November 2009, Mr. Melin emailed Human Resources to complain about Mr. Peterson's behavior. He complained that Mr. Peterson was abusive and made offensive comments. He further alleged his belief that Mr. Peterson did not want him to succeed and had set disproportionately high sales goals for him. The email complaint did not mention Mr. Melin's ulcerative colitis or any discrimination or harassment based on that medical condition. Verizon investigated Mr. Melin's allegations against Mr. Peterson, and ultimately concluded that Mr. Peterson had violated its Code of Conduct by sending "rude and inappropriate emails,"[2] making

---

[1]  "[C]olitis is an inflammatory bowel disease, which causes ulcers within the lining of the colon, with resulting symptoms of pain, bleeding, diarrhea, and weight loss." Aplt. Br. at 4.

[2]  Some of these emails were sent in 2005 before Mr. Melin was diagnosed with ulcerative colitis and before Mr. Peterson became his supervisor. None of the emails referenced Mr. Melin's medical condition. The emails did use foul language and inappropriate sexual references to refer to Mr. Melin and his clients. *See* Aplt. App., Vol. V at 1023-24 (identifying emails with inappropriate language).

"crude comments in front of direct reports and peers," and discussing Mr. Melin's "physical ailments with others." Aplt. App., Vol. IV at 723.

In August 2010, Mr. Melin complained to Verizon that he was being retaliated against for filing a complaint about Mr. Peterson's behavior. Verizon conducted an investigation into Mr. Melin's second complaint, but concluded that Mr. Melin was not subject to retaliation. Mr. Melin continues to be employed by Verizon as an Account Manager.

Mr. Melin filed an initial complaint with the Equal Employment Opportunity Commission (EEOC) on March 4, 2010, and an amended complaint on November 1, 2010. The EEOC concluded that Mr. Peterson did violate the ADA's confidentiality provisions by disclosing information about Mr. Melin's medical condition to other employees. But the EEOC was "unable to conclude" that Mr. Melin "was harassed and denied a reasonable accommodation; that his compensation/commission structure was unfairly created and applied; [or] that he was undermined and not provided support by management." *Id.*, Vol. I at 19. The EEOC issued a right-to-sue letter on May 24, 2012. This action followed.

## II. Discussion

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also

includes an anti-retaliation provision, which prohibits discrimination against an individual for opposing any act or practice made unlawful by the ADA. *See id.* § 12203(a). Title VII's anti-retaliation provision prohibits discrimination against an individual for opposing any act or practice made unlawful by Title VII (discrimination based on race, color, religion, sex, or national origin). *See id.* § 2000e-3(a).

Mr. Melin challenges the district court's decision to grant summary judgment in favor of Verizon on his ADA claims for discrimination and retaliation, and his Title VII retaliation claim.[3] "We review the district court's grant of summary judgment de novo, applying the same standard as the district court." *Crowe v. ADT Sec. Servs., Inc.,* 649 F.3d 1189, 1194 (10th Cir. 2011). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

A. Retaliation Claims

We address the retaliation claims first. Mr. Melin did not have direct evidence of retaliation so his retaliation claims proceeded under the burden-shifting framework of *McDonnell Douglas. See Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1207-08

---

[3] As part of Mr. Melin's initial complaint to Verizon, he also complained that Mr. Peterson made offensive comments and jokes about African Americans and Jewish employees. He alleged that he was retaliated against for engaging in this protected activity in violation of Title VII.

(10th Cir. 2007) (ADA claim); *Conroy v. Vilsack*, 707 F.3d 1163, 1171 (10th Cir. 2013) (Title VII claim). Under that framework, he needed to first establish a prima facie case of retaliation. In order to do so under the ADA or Title VII, he had to show: "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Proctor*, 502 F.3d at 1208 (internal quotation marks omitted); *Conroy*, 707 F.3d at 1181 (same). Verizon did not contest that Mr. Melin engaged in protected activity by making internal complaints and filing charges with the EEOC.

On his ADA retaliation claim, the district court concluded that Mr. Melin had failed to show that any of his alleged incidents of retaliation rose to the level of a materially adverse action. The court further concluded that, even if they did rise to that level, Mr. Melin had failed to show a causal connection between the actions and his protected activity.

The district court reached the same conclusion with respect to Mr. Melin's Title VII retaliation claim, noting that Title VII claims are now subject to a heightened "but-for" causation standard, s*ee Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013); *Davis v. Unified Sch. Dist. 500*, 750 F.3d 1168, 1170 (10th Cir. 2014). The district court explained that Mr. Melin could not "show that *but for* his complaint, he would not have suffered these materially adverse acts." Aplt. App., Vol. V at 1041.

We agree with the district court that Mr. Melin failed to establish a prima facie case of retaliation under the ADA or Title VII. The district court conducted a thorough and well-reasoned analysis of those claims and we see no need to repeat it here. We therefore affirm the district court's decision on the retaliation claims for substantially the same reasons stated in the district court's Memorandum and Order dated March 12, 2014.

### B. Disability Discrimination Claim

We now turn to Mr. Melin's disability discrimination claim. As with his retaliation claims, Mr. Melin did not have direct evidence of disability discrimination so he was required to establish a prima facie case of discrimination under the *McDonnell Douglas* framework, *see EEOC v. C.R. England, Inc.,* 644 F.3d 1028, 1038 (10th Cir. 2011). To do so, he needed to show that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job . . . ; and (3) suffered discrimination by an employer . . . because of that disability." *Id.* at 1037-38 (internal quotation marks omitted). In order to satisfy the third prong, "a plaintiff generally must show that he has suffered an adverse employment action because of the disability." *Id*. at 1038 (internal quotation marks omitted). The district court determined that Mr. Melin could not establish a prima facie case of discrimination because he failed to make the requisite showing on the first and third prongs. Mr. Melin argues that the district

court erred in concluding that he could not establish a prima facie case of discrimination.

Mr. Melin first asserts that the district court erred in its determination on the first prong because the district court used an outdated statutory definition in analyzing whether Verizon regarded him as disabled. Congress did amend the ADA, effective January 1, 2009, to provide that a person is regarded as disabled if they have an "actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3)(A). We agree that the district court did not use this new definition when analyzing Mr. Melin's claim. We need not address, however, how the district court's use of the incorrect definition impacted its analysis of the first prong because the district court further determined that Mr. Melin had also failed to meet the third prong.

The third prong requires a showing that Mr. Melin suffered an adverse employment action because of his disability. "An adverse employment action includes acts that constitute a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005) (internal quotation marks omitted).

The district court noted that Mr. Melin had not suffered any adverse employment actions based on the traditional circumstances listed above. The court determined that Mr. Melin had alleged only one adverse employment action with respect to his discrimination claim: Mr. Peterson's 2009 assignment of struggling accounts, which Mr. Melin argued led directly to his decreased commission compensation.[4] The court explained, however, that Mr. Melin failed to offer proof that (1) the accounts were particularly troublesome; or (2) even if they were, that Mr. Peterson assigned those specific accounts because of Mr. Melin's medical condition.

We agree with the district court that Mr. Melin did not provide proof to support his allegation that he was assigned accounts that were problematic. While he argued in response to summary judgment that "Peterson assigned [him] several accounts that Peterson knew were poor performers," Aplt. App., Vol. III at 536, he did not offer evidence to support this assertion. He does not identify these "several accounts" by name or explain how they were poor performing. He did give one example of an account that he was assigned that was projected to bring in $500,000

---

[4]     Mr. Melin contends that the district court erred in reaching this conclusion, arguing that the district court did not consider all of his allegations regarding Verizon's discriminatory actions. As the district court noted in its decision, Mr. Melin's brief in opposition to summary judgment was "incredibly confusing, as Plaintiff constantly shift[ed] back and forth between alleged acts of discrimination and alleged acts of retaliation, often conflating the timeline of events." Aplt. App., Vol. V at 1030 n.49. We agree with the district court's characterization of Mr. Melin's brief in response to summary judgment and with its conclusion regarding the alleged adverse action.

in revenue even though it had disconnected services with Verizon. But he does not show how the assignment of that account led to his decreased commission compensation for 2009. Even if we consider the assignment of this one poor performing account as an adverse employment action, however, we agree with the district court that there is no evidence that Mr. Peterson assigned that account to Mr. Melin *because of* his medical condition.

A plaintiff is required "to present some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan v. Hilti*, *Inc*., 108 F.3d 1319, 1323-24 (10th Cir. 1997). Mr. Melin failed to demonstrate that there was a nexus between Mr. Peterson's alleged assignment of poor performing accounts and his medical condition. In his response to summary judgment, Mr. Melin argued that the evidence supported a finding that he suffered an adverse employment action because he was regarded as disabled. In support, he explained that: "The evidence noted above – Peterson's offensive, derogatory and disgusting statements about plaintiff 'shitting himself' because of his ulcerative colitis, the employer-substantiated animosity of Peterson to Melin, and the lost income—all took place in 2009." Aplt. App., Vol. III at 539. Mr. Melin's vague reference to the "evidence noted above" without any specific citations to where the evidence can be found in the record significantly hampers this court's ability to review his argument.

We recognize that Verizon did investigate Mr. Peterson's conduct and it concluded that he had engaged in unprofessional behavior, but the record does not

reflect that Verizon concluded that Mr. Peterson took any adverse employment actions against Mr. Melin because of his medical condition. As for the comments that Mr. Peterson allegedly made to other Verizon employees about Mr. Melin "shitting himself," while we agree that those comments were offensive and derogatory, Mr. Melin has not shown a nexus between those stray remarks and any adverse employment action. *See Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) ("Isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in [employment] decisions. . . . [The plaintiff] must demonstrate a nexus exists between these allegedly discriminatory statements and the [adverse employment action]."). Mr. Melin has not demonstrated that the district court committed reversible error in determining that there were no genuine issues of material fact in dispute with regard to whether Mr. Melin suffered an adverse employment action because of his disability.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

Entered for the Court

Stephen H. Anderson
Circuit Judge