**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

ANGELIA MCGOWAN,

     Plaintiff - Appellant,

v.

BOARD OF TRUSTEES OF
METROPOLITAN STATE UNIVERSITY
OF DENVER,

     Defendant - Appellee.

No. 15-1272
(D.C. No. 1:13-CV-01716-WJM-NYW)
(D. Colo.)

_____

**ORDER AND JUDGMENT***
_____

Before **BRISCOE**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Angelia McGowan sued the Board of Trustees of Metropolitan State

University of Denver (Metro State) claiming, among other things, racial

discrimination and retaliation under Title VII of the Civil Rights Act of 1964.  The

---

* After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

district court granted summary judgment in favor of Metro State. McGowan appeals,[1] and we affirm.

## I. Background

McGowan, an African American, was Assistant Director of Communications at Metro State from 2007 to 2011. Her first supervisor, Catherine Lucas, recruited McGowan for the job and used the school's affirmative action program to expedite the hiring process. McGowan was initially responsible for external communications, which involved significant interaction with the media. According to Lucas, McGowan struggled to "proactively pitch" stories to the media, R. at 197-98, and sometimes demonstrated poor "critical thinking skills," *id*. at 201-02. This led Lucas to believe McGowan would be better suited for a job requiring less media interaction, so she assigned McGowan to an internal communications position without changing her title or salary.

One of McGowan's primary responsibilities in her internal communications position was serving as the editor of *@Metro*, an online publication for Metro State faculty and staff. But according to McGowan's new supervisor, Donna Fowler, McGowan had an "ongoing problem" handling her editorial responsibilities. *Id*. at 247-48. Specifically, McGowan had trouble meeting deadlines, wrote articles with inaccurate information, and missed submissions.

---

[1] McGowan appeals only the district court's summary judgment on her Title VII discrimination and retaliation claims.

In April 2010, McGowan was given a poor performance evaluation. Because McGowan's move to internal communications occurred during the review period, both Lucas and Fowler were involved in her evaluation. McGowan earned an overall rating of "Achieves Performance Standards," but her numerical performance score was relatively low (1 on a 0-3 scale). *Id*. at 343, 350. As part of the evaluation, McGowan was asked to submit a report documenting media placements in the first part of the review period, while she was still working in external communications. Lucas discovered several errors in the report and accused McGowan of "fudg[ing] or fib[bing]." *Id*. at 273-74. In her written comments, Fowler said the errors created a "serious trust issue" with McGowan. *Id*. at 346. McGowan acknowledged the report was inaccurate, but submitted a written rebuttal claiming the errors were inadvertent and that Lucas and Fowler had created "a hostile work environment" for various reasons unrelated to race, *id*. at 360. McGowan later appealed the performance evaluation to little avail.

Shortly after her evaluation, McGowan complained about Lucas and Fowler to the director of Metro State's Equal Employment Opportunity (EEO) office, but she did not file a formal grievance and, at McGowan's request, the director did not discuss the meeting with either supervisor.

Over the next year, Fowler occasionally sent McGowan memos expressing concerns with her performance and asking McGowan to submit plans for improvement. When McGowan's performance did not improve, Fowler hired a consultant who worked with McGowan for a month and helped train her how to

3

publish a weekly newsletter like @*Metro*. In McGowan's next performance

evaluation, in April 2011, Fowler gave McGowan a slightly higher performance score

(1.36 on the 0-3 scale) and noted her proficiency in some areas, but concluded the

quality of McGowan's work and her skill in managing @*Metro* remained poor.

The poor performance reviews and performance-related memos eventually led

McGowan to believe she would be fired, so she resigned from Metro State in August

2011 and later brought this suit.

## II. Standard of Review

We review the grant of summary judgment de novo and apply the same

standard as the district court. *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877,

882 (10th Cir.), *cert. denied*, 136 S. Ct. 690 (2015).

Summary judgment is appropriate if, viewing the facts in the light most

favorable to the nonmoving party, "the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." *Id*.

(internal quotation marks omitted); Fed. R. Civ. P. 56(a). A dispute is "genuine" if

there is sufficient evidence for a rational trier of fact to resolve the issue either way.

*Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016). A fact is

"material" if it is essential to the proper disposition of the claim. *Id*.

## III. Analysis

McGowan claims Lucas and Fowler discriminated against her by giving her

poor performance reviews and criticizing her work, which led to her constructive

4

discharge.[2]  Similarly, she claims some of the poor reviews and critiques were in retaliation for McGowan accusing Lucas and Fowler of creating a hostile work environment and complaining about them to the EEO director.  But McGowan failed to produce sufficient evidence of either claim to survive summary judgment.

Because McGowan's claims are based on circumstantial evidence, the three-step *McDonnell Douglas*[3] burden-shifting framework applies.  *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011).  This requires McGowan to first establish a prima facie case of discrimination or retaliation.[4]  *Id*. at 1195.  If she clears this hurdle, Metro State must articulate a "legitimate, non-discriminatory or non-retaliatory rationale" for any adverse employment actions.  *Id*.  The burden then shifts back to McGowan, "who must prove by a preponderance of the evidence that

---

[2] McGowan claims she was constructively discharged because the criticism of her performance made working conditions so intolerable that she felt forced to resign.  Proof of constructive discharge can satisfy the "adverse employment action" requirement of McGowan's claims, *see Fischer v. Forestwood Co.*, 525 F.3d 972, 979 (10th Cir. 2008), but the district court found it unnecessary to determine whether McGowan presented sufficient evidence of constructive discharge because the court resolved her claims on other grounds.  We do the same.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[4] To establish a prima facie case of discrimination, an employee must present evidence that (1) she belongs to a protected class, (2) she suffered an adverse employment action, and (3) the "action took place under circumstances giving rise to an inference of discrimination." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007).  A prima facie case of retaliation requires an employee to show that (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have found the challenged action materially adverse (meaning the action might dissuade a reasonable worker from making or supporting a charge of discrimination), and (3) there is a causal connection between the protected activity and the adverse action. *Id*. at 803.

[Metro State's] reasons are a pretext for unlawful discrimination" or retaliation. *Johnson v. Weld Cty.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

The district court held that McGowan failed to establish a prima facie case of discrimination or retaliation, but even if she had, Metro State offered a legitimate reason for any adverse actions—McGowan's poor performance—which McGowan failed to show was pretextual.[5] We agree that McGowan failed to show pretext, so we affirm the district court's decision on this ground without addressing whether McGowan made a prima facie case of discrimination or retaliation.

"[A] plaintiff can establish pretext by showing the defendant's proffered non-discriminatory [or non-retaliatory] explanations for its actions are so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude they are unworthy of belief." *Id.* (internal quotation marks and brackets omitted). "To support an inference of pretext, . . . [a plaintiff] must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory [or retaliatory] agenda." *Id*.

McGowan claims "the sequence of events leading up to her constructive discharge constituted . . . circumstances indicative of pretext." Aplt. Opening Br. at 10. According to McGowan, this sequence began during the hiring process, when she "was advised . . . that Metro hired her only as a grudging concession to its prior

---

[5] The district court discussed McGowan's failure to show pretext only in the context of her retaliation claim, but its analysis applies equally to her discrimination claim because McGowan relies on essentially the same adverse acts for both claims (poor reviews, criticism of her performance, and constructive discharge) for which Metro State offers the same justification (McGowan's poor performance).

underrepresentation of African-Americans." *Id*. The only evidence supporting this claim is McGowan's deposition testimony that Lucas once told her Metro State wanted to increase its number of Hispanic students. McGowan did not recall Lucas' exact words, but her comment left McGowan with the impression Lucas would have preferred to hire a Latino. Assuming Lucas made such a comment, McGowan acknowledged that Lucas actively recruited her for the position at Metro State, suggesting she was no "grudging concession." And regardless, to establish pretext, a comment must be somehow tied to the employment actions in dispute. *Johnson*, 594 F.3d at 1212-13. McGowan presented no evidence that Lucas made similar comments during her employment at Metro State, and nothing in the record connects Lucas' comment to criticisms of McGowan's performance more than two years later.

McGowan claims her April 2010 performance evaluation also reveals evidence of pretext. Specifically, she argues the accusations of dishonesty that followed her inaccurate media report were "false, inconsistent, contradictory and implausible" because the report related to her duties in her external communications position, which she no longer held, and because some of the purported errors were later found to be correct. Aplt. Opening Br. at 12. But McGowan admits the report contained numerous errors, and she makes little effort to explain why she should not have been asked to complete the report, which related to duties she held during the review period, or why her supervisors should have overlooked the report's inaccuracies. Nor does McGowan offer evidence of any procedural irregularity in the evaluation

process.  In short, nothing about the April 2010 evaluation gives rise to an inference of pretext.

Finally, the evidence suggests Lucas and Fowler had honest concerns about McGowan's performance and tried to help her succeed.  Lucas testified that when she saw McGowan having trouble pitching stories, Lucas "began to give her coaching and feedback."  R. at 197-98.  And Fowler went so far as to hire a consultant who worked with McGowan for a month.  McGowan admits Lucas and Fowler were concerned about her performance,[6] and aside from McGowan's arguments regarding the April 2010 evaluation, she does not deny the particulars of their complaints.  In short, the record reveals no evidence that Metro State did not actually believe its proffered reasons for any adverse employment actions.  *See Johnson*, 594 F.3d at 1211 (requiring evidence that an employer did not actually believe its proffered reasons for an action to support an inference of pretext).  There is therefore nothing a rational factfinder could rely upon to find Metro State's justification for giving McGowan poor reviews and criticizing her performance unworthy of belief.  *See id.*

For these reasons, we conclude McGowan failed to show that Metro State's proffered reason for any adverse employment actions—McGowan's poor performance—was a pretext for discrimination or retaliation.

---

[6] This admission does not appear in McGowan's appellate briefs, but in her response to Metro State's motion for summary judgment.

8

We therefore affirm the district court's summary judgment in favor of Metro State.

Entered for the Court


Carolyn B. McHugh
Circuit Judge