FILED
United States Court of Appeals
Tenth Circuit

July 8, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

CYNTHIA ORR; PATRICIA PAIZ,

    Plaintiffs - Appellants,

and

STEPHEN ORR,

    Plaintiff,

v.

THE CITY OF ALBUQUERQUE;
MARY BETH VIGIL,

    Defendants-Appellees.

No. 07-2105

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. CIV-01-1365-JP/RHS)**

---

Paul J. Kennedy (Mary Y.C. Han, Charlotte L. Itoh, and Grieta A. Gilchrist with him on the briefs) of Kennedy & Han, P.C., Albuquerque, New Mexico, for Plaintiffs-Appellants.

Paula I. Forney, Assistant City Attorney (Robert M. White, City Attorney, with her on the brief), Albuquerque, New Mexico, for Defendants-Appellees.

---

Before **LUCERO, HARTZ,** and **GORSUCH**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

Albuquerque police officers Cynthia Orr and Patricia Paiz contend that the City of Albuquerque and Mary Beth Vigil, the Personnel Director for the Albuquerque Police Department, discriminated against them on the basis of pregnancy, in violation of the Pregnancy Discrimination Act of Title VII. Specifically, Officers Orr and Paiz allege that, when they took maternity leave, the defendants required them to do so in a manner that adversely affected their eligibility for early retirement, limited their ability to work overtime, and differed dramatically from how employees seeking time off for other medical purposes were treated. Defendants respond that they were merely applying a uniform policy applicable to all employees. The district court agreed with defendants and granted summary judgment in their favor. After a thorough review of the record in this case, we find the evidence sufficient that a reasonable jury could find defendants' explanation pretextual and infer discriminatory animus on the basis of pregnancy. Accordingly, we reverse and remand this matter for trial.

I

Plaintiffs Cynthia Orr and Patricia Paiz, veteran Albuquerque police officers, sought time off for the births of their children in 2000, a right Congress has guaranteed them through the Family and Medical Leave Act ("FMLA"). Under the FMLA's terms, covered employees are entitled "to take reasonable leave for medical reasons, for the birth or adoption of a child, and for the care of

a child, spouse, or parent who has a serious health condition," 29 U.S.C. § 2601(b)(2), and affected employers may not interfere with or discriminate against an employee seeking to exercise those rights, *id.* § 2615(a).

Plaintiffs allege that, after their pregnancy-related leave was approved by their supervisors, Ms. Vigil intervened to instruct them that they would have to exhaust their accrued sick leave before tapping into vacation time, and that in no event could they utilize their accrued compensatory time (paid time off awarded for overtime work and in lieu of a cash payment). Officers Orr and Paiz contend that others seeking time off for reasons unrelated to pregnancy but still protected by the FMLA – ranging from kidney dialysis to caring for a sick family member – were routinely allowed to use compensatory and vacation time before dipping into sick leave. And, plaintiffs submit, this differential treatment is no small thing for two reasons. First, under Albuquerque Police Department ("APD" or the "Department") policy, sick days, unlike vacation or compensatory time, can be saved over the years and used to help secure an early retirement. Second, and conversely, because the amounts of vacation and compensatory time are capped, one must use or lose them. Only a limited amount of unused vacation time, for example, can be carried over from year-to-year, with the remainder having to be "cashed out" at the end of each year. With respect to compensatory time, APD had a policy in effect during the relevant period requiring officers with more than 250 hours of compensatory time, a group that included both Officers Orr and

Paiz, to use that time before being allowed to work additional overtime. By prohibiting their use of compensatory time, defendants effectively prohibited plaintiffs from working overtime (and earning overtime pay) when they returned to work.

Ms. Vigil and the City do not contest that they required pregnant women seeking maternity leave to use sick leave first, or that they prohibited them from using compensatory leave. Neither do defendants seriously purport to defend their practices as consistent with the FMLA.[1] Indeed, after plaintiffs initiated proceedings before the Equal Employment Opportunity Commission in November 2000, the City of Albuquerque entered into an agreement with the Albuquerque Police Officer's Association ("APOA"), in June 2001, to allow women seeking maternity leave (and all others taking leave for FMLA-qualifying purposes) to use compensatory time and do away with the requirement that they use sick days before other kinds of leave. For reasons that are not entirely clear from the record, however, plaintiffs do not bring their suit under the FMLA, but instead proceed under the Pregnancy Discrimination Act ("PDA"), a component of Title VII that prohibits intentional discrimination in the workplace on the basis of

---

[1] The relevant Department of Labor ("DOL") regulations implementing the FMLA generally allow the use of compensatory time for FMLA purposes, 29 C.F.R. § 825.207(i); 29 C.F.R. § 553.25, and, most notably, indicate that "[n]o limitations may be placed by the employer on substitution of paid vacation or personal leave for [FMLA] purposes," *id.* § 825.207(e). *See* D. Ct. Op. at 23 (finding that "Defendants arguably violated [the FMLA regulations]").

pregnancy.  *See* 42 U.S.C. § 2000e(k).[2]  Ms. Vigil and the City defend this suit on the basis that, whatever the propriety of their practices under the FMLA, their actions were not the product of intentional discrimination on the basis of pregnancy in violation of Title VII.

As it happens, this is the second time the case is before us on appeal.  In response to an initial motion by defendants for summary judgment, the district court applied the *McDonnell Douglas* burden shifting rubric to plaintiffs' Title VII claims and dismissed them for failure to establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We reversed, explaining that defendants' primary defense – that they neutrally applied a standard policy to all employees – was relevant to later aspects of the *McDonnell Douglas* framework and that, on the limited question whether a *prima facie* case existed, plaintiffs had cleared that hurdle by coming forward with sufficient facts to show that defendants had treated "at least one non-pregnant

---

[2]  Plaintiffs also brought a claim of pregnancy discrimination under the New Mexico Human Rights Act ("NMHRA").  N.M. Stat. § 28-1-1.  Because the burden on plaintiffs to prove their NMHRA claims is identical to their burden under Title VII, the analysis of plaintiffs' federal claims that follows applies equally to their state law claims.  *See Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005) (citing *Cates v. Regents of New Mexico Inst. of Mining & Tech.*, 954 P.2d 65 (N.M. 1998)).  The only difference, as the district court noted, is that plaintiffs may proceed against Ms. Vigil in her individual capacity under the NMHRA, *Sonntag v. Shaw*, 22 P.3d 1188, 1193 (N.M. 2001), while, under Title VII, they may proceed against Ms. Vigil only in her official capacity, *Sauers v. Salt Lake County*, 1 F.3d 1122, 1125 (10th Cir. 1993).  *See* D. Ct. Op. at 14-15.

employee . . . more favorably than them." *Orr v. City of Albuquerque*, 417 F.3d 1144, 1152 (10th Cir. 2005) ("*Orr I*") (internal quotation and brackets omitted). We remanded the case, leaving open the possibility of future summary judgment proceedings on the remaining *McDonnell Douglas* questions whether defendants had come forward with evidence suggesting that they had indeed enforced a neutral policy with all employees, and whether plaintiffs might succeed in showing such a proffered neutral business explanation to be pretext for intentional discrimination. *Id.* On remand, the district court took up those very questions and eventually granted summary judgment for defendants once again. Plaintiffs now appeal this second summary judgment, asking us to reverse and send the matter to trial.

II

A

In our court, PDA claims proceed in much the same manner as other Title VII claims of disparate treatment. *See EEOC v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir. 1992); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). Because the plaintiffs in this case sought to prove intentional discrimination by means of "indirect" proof, we are obliged to analyze their claims, prior to trial, under the well worn *McDonnell Douglas* burden-shifting framework. *See Orr I*, 417 F.3d at 1149.

Pursuant to *McDonnell Douglas*'s terms, after we determined in *Orr I* that plaintiffs had established a *prima facie* case – showing differential treatment between employees who were and were not pregnant – the burden shifted to defendants to articulate a legitimate, non-discriminatory reason for the adverse employment action suffered by Officers Orr and Paiz. *See id.* In this appeal, we do not understand plaintiffs to dispute that the City and Ms. Vigil have proffered evidence supporting two such non-discriminatory explanations for their conduct. Accordingly, this appeal focuses on the final *McDonnell Douglas* question – namely, whether plaintiffs have adduced evidence from which a reasonable jury could conclude that the defendants' proffered non-discriminatory reasons for their actions are pretext for intentional discrimination on the basis of pregnancy. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 & n.10 (1981); *Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1163 (10th Cir. 2007) (Plaintiffs must come forward with "evidence of differential treatment sufficient to permit an inference that the true explanation . . . was intentional discrimination."); *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005) ("[T]he factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions–simply disbelieving the employer is insufficient."); *see also* Martin J. Katz, *Reclaiming* McDonnell Douglas, 83 Notre Dame L. Rev. 109, 130-31

(2007) (discussing the chain of inferences under *McDonnell Douglas* at the pretext stage, "from error, to lie, to cover-up, to discrimination").

In assessing this question, we approach it *de novo*, viewing the facts (and all reasonable inferences the facts entail) in the light most favorable to plaintiffs as the summary judgment respondents. We are also cognizant that plaintiffs are not limited in their proof on this score; pretext can be shown in any number of ways, "including but not limited to differential treatment of similarly situated employees and procedural irregularities." *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir. 2008). Neither, of course, do we look at each piece of evidence in isolation; rather, in assessing whether plaintiffs have shown pretext, we are obliged to consider their evidence in its totality. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1174 (10th Cir. 1998); *Horizon/CMS Healthcare Corp.*, 220 F.3d at 1200.

B

The first and primary justification defendants offer for their conduct is that they were simply following a written departmental policy – one that purportedly required *all* APD employees taking leave for any FMLA – qualifying purpose to use their accrued sick days before other types of leave, and flatly prohibited the use of compensatory leave. In support of their position, defendants point to written regulations that indisputably (i) allowed the city to designate any leave taken for a FMLA-qualifying purpose as FMLA leave, (ii) prohibited the use of

compensatory time for FMLA leave, and (iii) required sick leave be exhausted before other types of leave be used for FMLA leave.

The difficulty with this line of defense is that Officers Orr and Paiz have come forward with evidence suggesting that the regulations in question were not issued until May 2000, a month *after* Officer Orr gave birth to her child, and that they remained in *draft* form throughout 2000, when both plaintiffs sought and took maternity leave. Indeed, plaintiffs' proof suggests that the regulations in question did not take effect until February 2001, and even then they were changed almost immediately pursuant to the APOA agreement in June 2001.

Defendants offer no rejoinder to plaintiffs' proof but reply instead that we should consider the draft status of their regulations immaterial because those regulations did nothing more than clarify and continue pre-existing APD policy requiring the use of sick leave and precluding the use of compensatory time for any FMLA-qualifying leave. Plaintiffs have presented evidence, however, from which a reasonable jury could conclude that material differences *do* exist between the then-controlling policy and the draft rules defendants cite. Indeed, the controlling policy in effect during the relevant period explicitly states that "[e]mployees *may use accrued vacation* as all or part of the 12-workweek FMLA entitlement." App. at 586, 622 (emphasis added). Additionally, Assistant City Attorney Judy Kelley testified that her understanding of the controlling APD policy was that employees had the option of taking vacation leave for any FMLA-

qualifying absence – something quite different from the mandatory requirement in the draft policy that sick leave must be exhausted first.  Notably, too, plaintiffs have adduced still further evidence suggesting that, written policies aside, as a practical matter the Department regularly permitted employees seeking non-pregnancy FMLA leave to avoid tapping into their sick leave accounts during the period in question.  In fact, *all* of the several APD officers whose testimony the district court admitted[3] indicated that it was routine to use some combination of compensatory time, accrued vacation time, and sometimes sick leave (though not first) for non-pregnancy FMLA absences.[4]

---

[3]  Plaintiffs presented additional unsworn statements from other APD officers along these same lines; the district court, however, refused to consider them on the ground that they did not comply with 28 U.S.C. § 1746.  We discern no abuse of the district court's considerable discretion in holding as it did, and so limit our review to the same declarations considered by the district court.

After relating his own experience of using compensatory time for FMLA leave, Deputy Chief of Police Davalos proceeded to testify that this was a "customary" practice within APD.  The district court admitted Deputy Chief Davalos's testimony but deemed his discussion of the Department's customary practices "conclusory," and gave it no weight.  One might well question the district court's decision on this score, given that Mr. Davalos was Deputy Chief of Police and that he explained he was personally aware of the Department's practices and procedures as a result of his position.

[4]  Defendants reply that they tried to apply their policy to three men seeking FMLA leave for medical purposes having nothing to do with a pregnancy.  But this happened only *after* defendants were on notice of plaintiffs' complaints.  In these circumstances, a reasonable jury could (though of course need not) view these facts as part of a *post-hoc* effort to cover up past discriminatory practices, or at least not informative of the Department's practices and policies prior to the filing of this lawsuit.  *See Plotke v. White*, 405 F.3d 1092, 1103 (10th Cir. 2005)

(continued...)

-10-

At bottom, then, plaintiffs have presented evidence suggesting that (i) they were required to use sick leave for their maternity leave at a time when, (ii) the Department's regulations in force *permitted* the use of vacation time for FMLA leave, and (iii) other employees seeking FMLA leave for purposes unrelated to a pregnancy were routinely allowed to use vacation or compensatory time. Given this evidence and our precedent, we cannot help but conclude that a reasonable jury could find defendants' proffered justification to be pretextual for intentional discrimination. In fact, the record before us contains strong parallels with *Randle v. City of Aurora*, a case in which the plaintiff, a Filipino woman, brought a Title VII suit claiming employment discrimination on the basis of race and national origin, alleging that she was passed over for a promotion in favor of a white woman. 69 F.3d 441, 445 (10th Cir. 1995). The defendant city sought to explain its action on the basis that the position required an Associate's Degree, which the plaintiff indisputably did not have. *Id.* at 446, 453-54. Arguing that this proffered race-neutral defense was pretextual, plaintiff put forward evidence that the city allowed the white woman who was hired to substitute two years of college for an actual Associate's Degree. *Id.* at 453-54. Moreover, when the city

---

[4](...continued)
(holding that *post-hoc* reasons for an adverse employment decision constitute evidence of pretext); *Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1093 (10th Cir. 2007); *see also* Katz, *supra*, 83 Notre Dame L. Rev. at 127-28 (noting that from "the fact of a cover-up, the factfinder . . . might conclude that the employer lied to cover up a discriminatory decision").

discovered that the white woman it hired had not even completed those two years of college, it allowed her to keep the position. *Id.* at 454. In the face of this evidence, we held that the plaintiff had established a genuine issue of fact as to whether the city's claim that she was not qualified for the position was pretextual. *Id.* at 454. If anything, the evidence adduced by Officers Orr and Paiz is even stronger: they have shown not only that defendants' putative policy was regularly flouted, as the plaintiff did in *Randle*, but also that the controlling written policy actually permitted the sort of leave they sought. *See also Trujillo*, 524 F.3d at 1159 (finding sufficient evidence of pretext to preclude summary judgment where, among other things, "there was evidence that the [defendant's] policy did not reflect what actually occurred in practice").

C

To be sure, defendants offer a fall-back justification for Ms. Vigil's actions. Whatever the Department's policy and practice may have been, defendants insist that Ms. Vigil honestly, if perhaps mistakenly, believed Department policy required the use of sick leave for all FMLA-qualifying absences, and precluded the use of compensatory time all-together. In response to the fact that so many employees took leave for reasons unrelated to a pregnancy without being forced to tap into their sick leave accounts, defendants stress that Ms. Vigil did not personally review every employee's leave request; only when someone flagged a request as a potential problem did she become involved. At bottom then,

defendants submit, the fact that Officers Orr and Paiz were singled out was just the product of happenstance, mistake, or administrative oversight.

This line of argument often can provide a good defense; after all, people make mistakes and Title VII does not provide a cause of action for every human resources department error. *See Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) ("[O]ur role is to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."). Rather, Title VII requires a plaintiff to come forward with evidence from which a jury could conclude that the defendants' behavior was the result of something *more* than a mistake – namely, discriminatory animus. *See id.*; *Swackhammer*, 493 F.3d at 1168; *see also Miller*, 396 F.3d at 1111.

Plaintiffs acknowledge their burden in this vein and point us to evidence presented by Detective Dita Dow, in the form of a sworn affidavit, as well as two APD memoranda appended to her affidavit, suggesting that in 1997 Ms. Vigil treated eight other pregnant female police officers just as she treated plaintiffs in 2000, requiring them to use sick time for maternity leave. Detective Dow testified that these female officers, through counsel, asked Ms. Vigil and the Department to review their cases, emphasizing that other employees were freely allowed to use compensatory and vacation time for FMLA leave. The Department

agreed to undertake such a review and, ultimately, seemingly acknowledged Ms. Vigil's disparate treatment by restoring all of the pregnant officers' sick leave.

The district court found that this evidence "seems to contradict statements by . . . . [Ms.] Vigil that [she] interpreted [the APD policy], which was in effect in 1997, to disallow use of compensatory time for parental leave [and] appears to suggest pregnancy/sex based discrimination by Defendant Vigil beginning at least as of 1997, and therefore evidence of pretext in this case," rather than mere mistake. D. Ct. Op. at 29-30. We agree. This is not to say that Detective Dow's evidence would *necessarily* preclude a jury from accepting defendants' claim of mistake.[5] But neither can we gainsay that a reasonable jury could disbelieve defendants' claim that Ms. Vigil's treatment of Officers Orr and Paiz was merely a mistake. The evidence shows that Ms. Vigil singled out the FMLA leave requests of ten separate pregnant women over the course of three years; enforced against them a rule at odds with Department policy and practice; and, critically, continued to do so after being put on notice that her actions were inconsistent with Department policy and practice. Simply put, the evidence is sufficient to

---

[5] Along these lines, one might well ask: why would defendants agree to restore the 1997 sick leave time of Detective Dow and her colleagues, and yet persist in just the opposite course, enforcing a sick leave first policy, with respect to plaintiffs in 2000? Such contradictory behavior does seem to suggest some degree of confusion and mismanagement. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1178 (10th Cir. 2004) (Title VII does not make "inconsistent or irrational employment practices illegal.").

-14-

allow, if not compel, a reasonable fact-finder to conclude that Ms. Vigil did not honestly err but instead intentionally singled out pregnant women for differential treatment. *Cf. Swackhammer*, 493 F.3d at 1169-70 ("Evidence that the employer . . . was mistaken . . . is not sufficient to show that the employer's explanation is unworthy of credibility. . . . The relevant inquiry is . . . whether it honestly believed those reasons and acted in good faith upon those beliefs.") (quotation and citation omitted).

The district court ultimately granted summary judgment to defendants in large measure because it came to conclude that Detective Dow's evidence was inadmissible under Federal Rule of Evidence 408. Specifically, after acknowledging that it strongly suggested pretext, the district court ruled that Detective Dow's evidence implicated compromise discussions between herself and the Department and thus could not be considered under the terms of Rule 408 and our decision in *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987). Notably, while defendants did argue for holding Detective Dow's evidence inadmissible in their summary judgment motion, they never cited Rule 408 and, on appeal before us, they do not defend the district court's holding; rather, they suggest that Detective Dow's evidence concerns only a voluntarily agreement by them in 1997 to conduct an internal review of the allegations their

employees raised at the time about the disparate treatment of pregnant women.[6]

But even assuming without deciding that the district court was correct, and that Rule 408 is implicated by Detective Dow's evidence, we are not persuaded that either the Rule or *Bradbury* requires its exclusion.

As the district court rightly noted, we held in *Bradbury* that evidence pertaining to the compromise "of a claim," Fed. R. Ev. 408(a), includes evidence regarding the compromise of related cases, not just the one at hand. *See Bradbury*, 815 F.2d at 1363-64. But, critically, after declaring the rule that Rule 408 applies to exclude evidence regarding the compromise of related cases, we emphasized that "Rule 408 does not completely bar the admission of compromise evidence." *Id.* at 1364. "For example, in a list that is illustrative rather than exhaustive, the Rule states that evidence of other wrongs may be admitted to show . . . the absence of mistake." *Id.*; *see also id.* (finding that the "purposes not prohibited" by Rule 408 parallels the "other purposes" enumerated in Rule 404(b)). From there, we proceeded to hold that evidence from prior settlements can be "probative on the issue whether the incident involving [the parties in the current dispute] was simply an isolated mistake or, rather, part of a series of

---

[6] On appeal, defendants carefully argue only that, *assuming* Detective Dow's evidence implicates a settlement agreement, *then* Rule 408 would support its exclusion; they then remind us that we may affirm on grounds other than those relied upon by the district court and proceed to argue various alternative theories of affirmance. Appellees' Br. at 38 & n.18.

incidents that might illustrate outrageous conduct on the part of [the defendant]." *Id.* We see no daylight between our ultimate holding in *Bradbury* and this case. Even if the evidence involving Detective Dow and the other pregnant women implicates compromise discussions to which Rule 408 applies, by its terms Rule 408 and our case law permit the use of such evidence to show not liability *per se* but the absence of mistake. And that is exactly what plaintiffs properly seek to show in this case – namely, that Ms. Vigil's treatment of Officers Orr and Paiz was not a random accident, as defendants claim, but part of a larger and deliberate pattern of treating pregnant women differently from other employees seeking FMLA leave.

***

Officers Paiz and Orr allege that defendants discriminated against them when they took leave for the births of their children. Defendants seek to justify their treatment of plaintiffs in two ways: First, defendants say they were simply following Department policy. Second, and alternatively, defendants argue that even if they weren't applying Department policy, Ms. Vigil simply made a good faith mistake in requiring plaintiffs to exhaust sick leave and prohibiting them from using compensatory and sick time. After a thorough review of the record in this case, we find that the plaintiffs have presented evidence undermining both of defendants' explanations – and done so in a manner a reasonable jury could find suggestive of pretext for intentional discrimination. While defendants are of

course free to argue at trial that their treatment of plaintiffs was not the product of unlawful discrimination, we believe, after two rounds of summary judgment proceedings and appeals, that is where this matter must properly proceed.

*Reversed and remanded.*

07-2105- *Orr v. City of Albuquerque*

**HARTZ**, Circuit Judge, concurring:

I join Judge Gorsuch's opinion. I write separately solely to emphasize my view that the appeal turns on two particular items of evidence. First, I think that the affidavit from Deputy Police Chief Ruben Davalos was entitled to substantial weight. Given his high position in the chain of command, he was competent to testify to Department practice and policy regarding FMLA leave and compensatory time. Second, as Judge Gorsuch's opinion clearly demonstrates, Detective Dow's evidence was admissible. The district court apparently relied on Plaintiffs' failure to challenge the assertion in one of Defendants' briefs that the evidence was inadmissible because it reflects a settlement. But that assertion—one sentence in a 24-page brief—cited no authority, not even Fed. R. Evid. 408, and Defendants do not press the point on appeal. In this circumstance, I think it appropriate for us to address whether the evidence should have been excluded under Rule 408.