**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 24, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ABIODUN SOTUNDE,

     Plaintiff - Appellant,

v.

SAFEWAY, INC.,

     Defendant - Appellee.

No. 16-1494
(D.C. No. 1:15-CV-01139-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

     Abiodun Sotunde, a naturalized United States citizen originally from Nigeria, appeals from the district court's grant of summary judgment to his former employer, Safeway, Inc., on his claims of disparate treatment, hostile work environment, retaliation, and constructive discharge in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Exercising jurisdiction under 28 U.S.C. § 1291, we reverse and remand for further proceedings on certain disparate treatment claims. We affirm the grant of summary judgment to Safeway on the remaining claims.

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Safeway, a grocery chain, runs a Denver Distribution Center to receive and distribute the products it sells in its retail stores. The center includes warehouses for meat, perishables, frozen foods, produce, and grocery items. At the relevant times, Donald Grambusch was the Director of Distribution. The rest of the management chain consisted of (in descending order) Managers, Superintendents, and Supervisors.

In October 2004, Grambusch hired Sotunde to work in the Produce Warehouse. In February 2005, Grambusch promoted Sotunde to Supervisor, also in the Produce Warehouse. While employed at Safeway, Sotunde earned a second bachelor's degree in finance and a master's degree in business administration (MBA) and objectively improved the performance of the Produce Warehouse. Nevertheless, he was never promoted above Supervisor. Sotunde resigned from Safeway's employment in May 2013.

After he resigned, Sotunde brought this suit under Title VII and § 1981. Detailing instances of preferential treatment of white employees, he claimed he was denied promotion because of race, color, and national origin discrimination; he was subjected to a racially hostile work environment; he was subjected to retaliation after he complained to Safeway about unfair treatment; and he was constructively discharged. The district court, a magistrate judge presiding by consent of the parties under 28 U.S.C. § 636(c), granted Safeway's motion for summary judgment on all claims.

2

## ANALYSIS

"We review the district court's grant of summary judgment de novo, applying the same standard as the district court." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). We view the evidence in the light most favorable to and draw all reasonable inferences in favor of Sotunde, the nonmoving party. *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1220 (10th Cir. 2015). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe*, 649 F.3d at 1194 (citation and internal quotation marks omitted).

We do not separately discuss the Title VII and § 1981 claims because they share the same legal standards. *See Parker Excavating, Inc. v. Lafarge W., Inc.*, 863 F.3d 1213, 1220 (10th Cir. 2017) (retaliation); *Lounds*, 812 F.3d at 1221 (hostile work environment); *Crowe*, 649 F.3d at 1194 (disparate treatment).

## I.    Failure to Promote

Sotunde focuses his disparate treatment discrimination claims on three failures to promote him in 2012. All three positions—two for Manager and one for Superintendent—went to white males. The district court applied the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). In that framework, "the plaintiff must first establish a prima

3

facie case of discrimination or retaliation. Then, the defendant may come forward with a legitimate, non-discriminatory . . . rationale for the adverse employment action. If the defendant does so, the plaintiff must show that the defendant's proffered rationale is pretextual." *Crowe*, 649 F.3d at 1195. For the Manager positions, the district court held that Sotunde had established his prima facie case but had not presented sufficient evidence of pretext. For the Superintendent position, it held that he had not established a prima facie case.

### A. Manager Positions

#### i. Factual and Legal Background

In April 2012, Safeway posted two Manager positions at the Denver Distribution Center. The postings required a four-year college degree in logistics or seven years of related work experience. Sotunde applied, and Safeway's talent acquisition team identified him as a candidate who should proceed to the next step in the process. Grambusch decided who to interview and who would get the jobs. He did not select Sotunde for an interview. Ultimately, he awarded the positions to Richard Pawelcik, a white Denver Distribution Center employee with twenty years' experience, ten of them as a Supervisor, and Jason Cesario, a white out-of-state candidate who had managed warehouse operations for Chrysler and had previously worked for Safeway in a California distribution center.

The district court held that Sotunde had established a prima facie case and that Safeway had proffered legitimate, non-discriminatory reasons—that the "'candidates chosen had far greater potential for success . . . [and] had more relevant warehouse

4

management and leadership experience than Sotunde,'" and that Safeway "had concerns about [Sotunde's] leadership and communication skills." Aplt. App., Vol. 2 at 517 (quoting *id.*, Vol. 1 at 53). The district court then held that Sotunde had failed to offer evidence that would allow a reasonable jury to find that Safeway's proffered reasons were a pretext for discrimination.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). A plaintiff may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005) (internal quotation marks omitted). "[P]laintiffs are not limited in their proof on this score; pretext can be shown in any number of ways . . . ." *Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008). "[A]t the summary judgment stage, the inference of discrimination permitted by evidence of pretext must be resolved in favor of the plaintiff." *Bryant*, 432 F.3d at 1125.

### ii.     Evidence of Pretext

We disagree with the district court's evaluation of the evidence and conclude that the following evidence, viewed as a whole and in the light most favorable to

5

Sotunde, would allow a reasonable factfinder to disbelieve Safeway's asserted explanations for not interviewing him for the Manager positions.[1]

### a.    Qualifications

"An employer's failure to give more than sham or *pro forma* consideration to a candidate or his or her qualifications, coupled with other circumstantial evidence of discriminatory intent, can demonstrate pretext." *Danville v. Reg'l Lab Corp.*, 292 F.3d 1246, 1251 (10th Cir. 2002). "While it is the employer's understanding of an employee's qualifications that counts," a "reasonable inference that [the successful candidate's] qualifications were unreasonably inflated . . . , while plaintiff's were unreasonably denigrated," can be relevant to a pretext inquiry. *Id.* at 1252.

From an educational standpoint, a reasonable juror could find Sotunde was more qualified than either successful candidate. Pawelcik had no college degree, and it appears that Cesario had a bachelor's degree in business. But Sotunde had two bachelor's degrees and an MBA. And from a performance standpoint, Sotunde produced evidence that he met his individual and department goals and increased efficiency in the Produce Warehouse, and the talent acquisitions team identified him as a candidate who should proceed. Nevertheless, Grambusch did not offer him an interview. Moreover, Grambusch later asserted he had concerns about Sotunde, but

---

[1] Sotunde's opening brief identifies additional facts that we do not discuss because he did not invoke them in his district-court pretext discussion. District courts should not be faulted for failing to uncover facts that a nonmovant does not identify in opposing summary judgment. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998). But our decision today should not be read to preclude Sotunde from relying on those facts on remand, if appropriate.

as discussed below, successful candidate Pawelcik suffered from deficits comparable to ones Grambusch identified with regard to Sotunde.

These discrepancies could lead a reasonable juror to conclude that Grambusch gave only *pro forma* consideration to Sotunde's application and/or unreasonably inflated the successful candidates' qualifications while unreasonably denigrating Sotunde's.

### b. Procedural Irregularities

"[D]isturbing procedural irregularities can satisfy the requirements of a pretext claim." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1220 (10th Cir. 2002) (internal quotation marks omitted).

The job postings in the record show that Safeway managerial positions commonly prefer a college degree in either logistics or business. But Grambusch acknowledged that he could add or subtract qualifications for openings in the Denver Distribution Center. The two 2012 Manager postings (1) limited the preferred college degree to logistics, omitting a business degree, and (2) included a years-of-experience degree equivalent. A reasonable juror could infer that Grambusch had the ability to, and actually chose to, manipulate the qualifications to disadvantage Sotunde in relation to other candidates, particularly Pawelcik.

### c. Prior Treatment

Evidence of pretext may include "facts as to the [employer's] treatment of [the employee] during his prior term of employment." *McDonnell Douglas*, 411 U.S. at 804. Sotunde submitted evidence that Grambusch treated Sotunde poorly and, when

7

Sotunde discussed his concerns with Grambusch, Grambusch made comments that may have referred to Sotunde's race or national origin.

A particular incident occurred in November 2010, when Sotunde arranged to take a day off to help his mother after she had surgery. Nothing in the record indicates that the absence was not properly scheduled. Yet Grambusch called him at home, asking where he was. When Sotunde explained that he had time off to help his mother, Grambusch said, "You know, Abby, if you don't want to [be] part of this team, just let me know, so I'll replace you." Aplt. App., Vol. 1 at 184.

Soon thereafter, in December 2010, Sotunde told Grambusch he felt that Grambusch treated him differently from other employees. Grambusch "responded by saying that he has the power to do whatever he wants and can call [Sotunde] whenever he wishes." *Id.* at 114. He then made comments that employees at the distribution center "'don't perceive [Sotunde] well' and that over here in the U.S., 'perception is reality,'" and further stated, "'Abby, you can't call me racist because I hired you.'" *Id.*

A reasonable decision-maker could infer that Grambusch treated Sotunde poorly and entertained opinions of Sotunde based on his race or national origin. While "stray racial comments should typically not be admitted unless the plaintiff can link them to personnel decisions or the individuals making those decisions," *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000), these remarks were made by Grambusch, who was the decision-maker for the Manager positions.

8

### d.     Differential Treatment

Disparate treatment of similarly situated employees can contribute to a reasonable inference of pretext and defeat the employer's claimed legitimate business reason. *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1159-60 (10th Cir. 2008); *see also McDonnell Douglas*, 411 U.S. at 804 (characterizing differential treatment as "[e]specially relevant" to showing pretext).

Sotunde presented evidence that Grambusch told him that he would not be promoted because his warehouse had not been producing for ten years, yet Grambusch had promoted Pawelcik out of that same warehouse three years earlier. Moreover, Grambusch testified in his deposition that absenteeism and occupational injuries were important considerations, but he then acknowledged that Pawelcik had been counseled about both absences and injuries. And although Grambusch expressed concern about Sotunde's relationships with other employees, he also conceded that Pawelcik did not get along with some other employees. Based on this evidence, a reasonable juror could doubt the veracity of Grambusch's explanation for not considering Sotunde for the Manager positions. *See Danville*, 292 F.3d at 1252 (noting, in concluding that the plaintiff made a sufficient showing of pretext, that the successful candidate "suffered from defects arguably equal to those advanced to justify denying plaintiff an interview").

### e.     Subjective Criteria

"[D]iscrimination is more likely where subjective rather than objective criteria are used to reject a candidate's application." *Id.*; *see also Garrett*, 305 F.3d at 1218

("Courts view with skepticism subjective evaluation methods such as the one here."). Safeway's legitimate, non-discriminatory explanations—focusing on "potential for success" and "leadership and communications skills," Aplt. App., Vol. 1 at 53— make it evident that subjective considerations were used to reject his applications. True, "the existence of subjective criteria alone is not considered evidence of pretext," but "the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards." *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1120 (10th Cir. 2007).

### f. Minority Employment

Finally, evidence of an employer's "general policy and practice with respect to minority employment" may also be relevant to pretext. *McDonnell Douglas*, 411 U.S. at 804-05.[2] Sotunde presented evidence that there were no African-American Managers while he worked at the Denver Distribution Center, and there were no other African-American Supervisors until after he complained of discrimination.

### iii. Conclusion

Some or all of these pieces of evidence might not be enough in and of themselves to create a genuine issue of material fact as to pretext. *See, e.g., Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1308-09 (10th Cir. 2005) (per curiam) ("[M]inor differences between a plaintiff's qualifications and those of a

---

[2] We note, however, that the district court must carefully evaluate statistical evidence. *See, e.g., Luster v. Vilsack*, 667 F.3d 1089, 1094 (10th Cir. 2011).

10

successful applicant are not sufficient to show pretext."); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) ("[S]imply being the lone member of an identifiable racial or ethnic minority within a supervisor's chain of command, without more, does not demonstrate racial animus."). But we do not "look at each piece of evidence in isolation; rather, in assessing whether plaintiffs have shown pretext, we are obliged to consider their evidence in its totality." *Orr*, 531 F.3d at 1215. Reviewed in the light most favorable to Sotunde, we are persuaded that the totality of the evidence is sufficient for a reasonable jury to disbelieve Safeway's explanations for not interviewing Sotunde for the Manager positions. Accordingly, we reverse the grant of summary judgment on the claims regarding the non-promotion to the Manager positions and remand for further proceedings.

**B.     Superintendent Position**

In August 2012, white male Brandon Frazee was named to a newly created Superintendent position at the Denver Distribution Center. The position was not posted for applications, so Sotunde did not apply. Safeway asserts that the position was created especially for Frazee as part of Safeway's Military Veterans Recruitment Program. The district court held that Sotunde had failed to demonstrate the second prong of the prima facie case because the position was not posted and he did not apply. Sotunde argues that he nevertheless can establish a prima facie case because he was "in the group of people who might reasonably be interested in the particular job," *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1228 (10th Cir. 2001) (internal quotation

11

marks omitted), *overruled in part on other grounds as explained in Boyer v. Cordant Techs., Inc.*, 316 F.3d 1137, 1140 (10th Cir. 2003).

Even assuming that Sotunde can establish a prima facie case, however, summary judgment for Safeway still is appropriate.[3] Safeway's legitimate non-discriminatory reason for not selecting Sotunde is that the Superintendent position was created for Frazee as part of a corporate program to employ military veterans. Grambusch testified in his deposition, and Safeway asserted in its discovery responses, that the decision to make Frazee a Superintendent was made by Safeway's corporate office, not by management in the Denver Distribution Center. Sotunde has not presented any evidence to undermine these assertions. In his deposition, he admitted that his perception that Grambusch was involved in the decision is based on hearsay and not his own knowledge, and he "[doesn't] have any basis for disputing" Grambusch's testimony that the decision was made by the corporate office. Aplt. App., Vol. 1 at 80. Based on this record, Sotunde has failed to identify a genuine issue of material fact as to whether Safeway's asserted non-discriminatory reason was pretext for discrimination against him. We therefore affirm the grant of summary judgment to Safeway on the disparate treatment claims concerning the August 2012 non-selection for the Superintendent position.

---

[3] We may affirm on any ground supported by the record. *Johnson v. Weld Cty.*, 594 F.3d 1202, 1215 (10th Cir. 2010).

12

## II.     Hostile Work Environment

Sotunde also claims that he was subjected to a racially hostile work environment.  For this claim, he "is required to demonstrate that a rational jury could conclude that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Jones v. Barnhart*, 349 F.3d 1260, 1268 (10th Cir. 2003) (internal quotation marks omitted).  The district court concluded that Sotunde had failed to show that he was subjected to discriminatory harassment that was severe or pervasive.  We agree with the district court's evaluation of the hostile work environment claims.

In assessing whether conduct is sufficiently severe or pervasive, the court "must examine all of the circumstances alleged including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* (internal quotation marks omitted).  "Moreover, courts assess whether the work environment is both subjectively *and* objectively hostile or abusive."  *Lounds*, 812 F.3d at 1222 (brackets and internal quotation marks omitted).  "In other words, it is not enough that a particular plaintiff deems the work environment hostile; it must also be of the character that it would be deemed hostile by a reasonable employee under the same or similar circumstances."  *Id.* at 1222-23.  It is insufficient for a plaintiff to show "a few isolated incidents of

13

racial enmity"; instead, "there must be a steady barrage of opprobrious racial comments." *Id.* at 1223 (internal quotation marks omitted).

Before the district court, Sotunde identified several incidents and comments to establish a hostile work environment.[4] He relied on the December 2010 conversation with Grambusch, in which Grambusch stated that Sotunde could not call Grambusch a racist because he hired Sotunde. Sotunde also relied on the fact that in and around September 2012, he was not included in certain conversations and e-mail communications about his work, including discussions of cutting shifts in the Produce Warehouse and changes to the loading docks. He further pointed to a December 2012 incident in which he called in sick. His supervisor, George Scott, demanded that he come into work even though he was taking a prescription painkiller. After Sotunde's wife, a pharmacist, told Scott that Sotunde could not work in a warehouse around heavy machinery while on the painkiller, Scott told other employees that Sotunde's wife had a big mouth and relayed details of the private conversation. Finally, sometime in 2013, there were conversations among the employees on the Produce Warehouse floor that Sotunde would not be employed by Safeway much longer.

These incidents are insufficient for a reasonable jury to find Sotunde was subjected to an objectively racially hostile work environment. They simply do not

---

[4] With regard to Sotunde's hostile work environment, retaliation, and constructive discharge claims, we consider only those facts that Sotunde identified in his respective arguments in the district court, not additional facts mustered in the opening appellate brief. *See Adler*, 144 F.3d at 672.

rise to the level of conduct that we have held creates a genuine issue of material fact as to severity or pervasiveness. *See, e.g., Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144-45 (10th Cir. 2008) (involving a series of harassing acts, including "various graffiti and cartoons combined with the words 'nigger' and 'nigger go home' etched on [the plaintiff's] locker," that culminated in a lynching noose). Tellingly, in at least two cases involving more egregious facts than those alleged by Sotunde, we held that the evidence of pervasiveness created a "close" question. *Lounds*, 812 F.3d at 1213-17, 1227 (involving multiple and continual references to racial stereotypes, a discussion of lynching, habitual use of the term "nigga" and references to "the hood," and direction to address a vice president with "yes massa"); *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680-82, 683 (10th Cir. 2007) (involving several discrete incidents of racial harassment over four years and ongoing harassment (including comments referring to plaintiff's ethnicity every two to three days), in addition to comparatively poorer treatment of plaintiff and his son, the only Hispanic employees). In comparison, Sotunde did not identify sufficient facts to create even that close a question. Rather, his facts are more analogous to those in our decisions concluding that the alleged actions failed to support a claim for a hostile work environment. *See, e.g.*, *Morris v. City of Colo. Springs*, 666 F.3d 654, 665-66 (10th Cir. 2012) (holding evidence of isolated physical contact, throwing human tissue, and yelling and making demeaning comments about plaintiff's work was insufficient); *McGowan v. City of Eufala*, 472 F.3d 736, 743-44 (10th Cir. 2006) (noting that many of plaintiff's allegations, such as an officer's "petty criticism of her

15

work" were "of a trivial nature and do not rise to a claim of an 'abusive' materially adverse work environment"); *Chavez*, 397 F.3d at 832 (holding that two racially offensive remarks "[fell] far short of the 'steady barrage' required for a [racially] hostile environment claim"). We therefore affirm the grant of summary judgment to Safeway on the hostile work environment claims.

## III. Retaliation

In May 2012, Sotunde complained to the director of human resources about not being promoted to Manager and his perception that only white males were promoted. Then in November 2012, he filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Sotunde claims that after his internal complaints and his EEOC charge, Safeway subjected him to retaliation. Under the *McDonnell Douglas* framework, a plaintiff's prima facie case of retaliation requires him to show, among other things, that he was subjected to action that a reasonable person would have found to be "materially adverse." *Parker Excavating*, 863 F.3d at 1220. The district court held that Mr. Sotunde had failed to satisfy this requirement. We agree.

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). Therefore, the action must be one that is materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (internal quotation marks omitted). "We speak of *material* adversity because we believe it is important

16

to separate significant from trivial harms." *Id.* "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* The standard for judging harm is objective. *Id.*

Before the district court, Mr. Sotunde cited the following as materially adverse actions: (1) in and around September 2012, he was excluded from conversations and e-mail communications in which he should have been included; (2) in January 2013, Scott and another managerial employee sent e-mails questioning his work, and they failed to respond to Sotunde's efforts to learn about the alleged problems; (3) on April 12, 2013, Scott gave him a lower performance review for 2012; and (4) sometime in 2013, management made comments about Sotunde's future with Safeway and told employees that he was planning on quitting.

Much of this evidence, however, describes actions in the nature of snubs or slights that are insufficient to support a retaliation claim. *See Johnson v. Weld Cty.*, 594 F.3d 1202, 1216 (10th Cir. 2010) (stating that "alleged snubs" that included supervisors giving her the "'cold shoulder,'" sitting farther away from her at meetings, being too busy to answer her questions, and generally trying to avoid her were insufficient to support a claim of retaliation). Regarding Sotunde's exclusion from certain communications and the questioning of his work, Sotunde has not identified any evidence showing how these actions actually interfered with his ability to do his job, which "is probative of whether the [action] was serious enough to dissuade a reasonable worker from filing or pursuing a discrimination claim,"

17

*Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012) (stating that decreased communications from supervisor were not materially adverse because they did not affect plaintiff's ability to do her job satisfactorily). Finally, regarding the performance evaluation for 2012, the overall rating was "successfully meets expectations" and Sotunde received the same merit increase he had received in past years. Sotunde asserts that the lower performance review made him ineligible for promotion, but as the district court noted, that assertion remains unsupported by any evidence in the record. "Mere allegations unsupported by further evidence . . . are insufficient to survive a motion for summary judgment." *Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005). The district court therefore did not err in relying on *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 896 (10th Cir. 1994), in which this court held that a lower performance evaluation that still reflected satisfactory remarks did not support a claim of retaliation.

For these reasons, we affirm the grant of summary judgment to Safeway on the retaliation claims.

## IV.    Constructive Discharge

"A constructive discharge occurs when an employer, through unlawful acts, makes working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1135 (10th Cir. 2004). "Working conditions must be so severe that the plaintiff simply had no choice but to quit." *Id.* The district court held that Sotunde had failed to present sufficient evidence to meet this standard. We agree.

18

"When examining a constructive discharge claim, we disregard both the employee's subjective view of the workplace environment and the employer's subjective intentions regarding the employee." *Baca*, 398 F.3d at 1216. "The question is not whether working conditions at the facility were difficult or unpleasant." *Exum*, 389 F.3d at 1135 (internal quotation marks omitted). Instead, a plaintiff "must allege facts sufficient to demonstrate under an objective test that a reasonable person would have viewed [his] working conditions as intolerable." *Heno*, 208 F.3d at 858 (internal quotation marks omitted). "Plaintiff must show that, at the time of his resignation, his employer did not allow him the opportunity to make a free choice regarding his employment relationship." *Exum*, 389 F.3d at 1135. "[E]ven requiring an employee to choose between resignation and termination is not necessarily a constructive discharge, unless the employee's decision is, for some reason, involuntary." *Id*.

Mr. Sotunde relies on the same conduct he proffers to support his other claims—the failures to promote him, the exclusion from work-related e-mail messages and meetings, the lower performance review for 2012, Scott's discrediting his work, and management sowing rumors that he would not be there much longer. He also alleges Safeway failed to investigate his complaints of discrimination and retaliation.

This evidence is insufficient to establish, objectively, that a reasonable person would have viewed the working conditions as intolerable. *See Sandoval v. City of Boulder*, 388 F.3d 1312, 1325-26 (10th Cir. 2004) (finding no constructive discharge

19

where the plaintiff was investigated and reassigned to another position whose conditions were not objectively intolerable); *Heno*, 208 F.3d at 858 (holding that employee's "feelings that she was being isolated" were not relevant to the constructive discharge inquiry); *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533-34 (10th Cir. 1998) (finding no constructive discharge when the plaintiff was treated differently from other teachers with regard to sick leave and was reprimanded for walking out of a meeting, because the work environment, "while unpleasant," was not objectively intolerable). And when "facts fail to meet the threshold required for a retaliation claim—a material adverse harm—it follows that those same facts cannot satisfy the higher threshold required for a constructive discharge claim." *Johnson*, 594 F.3d at 1217 n.6. As discussed above, the facts fail to meet the threshold required for a retaliation claim, as does the additional allegation that Safeway failed to investigate his complaints, *see Daniels*, 701 F.3d at 640 (stating that a failure to investigate a complaint cannot be considered retaliatory where such failure does not lead to demonstrable harm and "leaves an employee no worse off than before the complaint was filed"). Accordingly, we affirm the grant of summary judgment to Safeway on the constructive discharge claims.

## CONCLUSION

We reverse the grant of summary judgment to Safeway on the Title VII and § 1981 disparate-treatment claims concerning the non-selection for the Manager positions in April 2012, and we remand those claims for further proceedings. We affirm the grant of summary judgment to Safeway on the disparate treatment claims

20

concerning the non-selection for the Superintendent position in August 2012, the hostile work environment discrimination claims, the retaliation claims, and the constructive discharge claims.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge